Good afternoon, and may it please the court, Joe Rainsbury for the appellant Old Dominion Electric Cooperative. This case raises the question of whether a federal preemption defense to a state law cause of action creates federal jurisdiction under 28 U.S.C. 1331. To ask that question is to answer, for over 100 years, it's been said of law that a federal defense cannot ground federal question jurisdiction. And this is so even where the applicability or not of the federal defense presents the main issue, indeed the only real issue in the case. Now, in the present case, the claims asserted in ODEC's amended complaint filed in state law are all standard state law claims, breach of contract, unjust enrichment, and constructive fraud. It's only PJM's defense to those claims in the form of the filed rape doctrine that raises any question of federal law. And because a federal defense cannot ground federal question jurisdiction, the district court lacked subject matter jurisdiction, and so should have remanded the matter to state court. Now, in light of the limited time I have this morning, I intend only to address the substantial federal question issue. And rest on our briefs on the issue of complete jurisdiction and on the question of whether you can waive an argument about the well-pleaded complaint rule. So unless the court has questions on those issues, I'll go directly to the substantial federal question point. All right. Well, before getting into the weeds on PJM's substantial federal question arguments, I'd like to give the court an overview of ODEC's argument. And it's really just a simple one, and it rests on four premises that we don't think are in dispute and, frankly, that we don't think are disputable. And the first premise is that in this case, PJM has grounded its federal question argument on the federal file rape doctrine. And that much is apparent from PJM's 12-page notice of removal, which injected the issue into this case for the first time, and from its legal arguments both below and in this court. So we don't think that's in dispute. Second premise is that the federal file rape doctrine is an ordinary preemption doctrine. And where it applies, the rule derives its force from the supremacy clause. The case is on point, agree, and PJM cites no case to the contrary. Third premise is that ordinary preemption is a federal affirmative defense. It is not an element of a state law claim. In asserting a state law claim, you don't have to allege the nonexistence of federal preemption. That's not an element. And that was this court's holding in the Broward v. Bayer case, which we discussed at length in our briefs, and it was the court's holding in the recent Vlaming decision. And the last premise is perhaps the simplest one. And that's that a federal defense is not a proper basis for asserting federal question jurisdiction. Counsel, can I tell you my concern about, I understand those arguments, but so far I feel like you had just described the dissenting opinion in Bryan. I mean, that's basically what Judge Ludig said in Bryan. And so my concern is, you know, the district court thought this case was controlled by Bryan. And your argument on appeal, as I understand it, is basically mostly just that Bryan is wrong, that either the dissent had it right in the first place or it's been superseded or something like that. Let me give you a chance to respond. Don't you have to distinguish Bryan? Well, we have, yes. But I don't think we need to, because Bryan predated the Supreme Court's decisions in Gunn and Grable. And as this court said in the Flying Pig case, the Supreme Court has really kind of reined in and clarified the rules for substantial federal question jurisdiction. Are you saying the Supreme Court overruled Bryan? I'm saying that the Supreme Court announced a standard that was more restrictive than the standard that this court used in Bryan. It did not expressly overrule Bryan. I'll agree with that. But I submit that if you apply the standard that Chief Justice Roberts stated in Gunn, I mean, you'd get a different outcome. Didn't you also say that there were subsequent Fourth Circuit cases that watered down Bryan, so to speak? Well, I mean, I'll be clear. There was no – there's been no subsequent case from this court that's really cited Bryan one way or the other on the substantial federal question. Nothing but the Fourth Circuit watered down Bryan. You don't take that contention. The Fourth Circuit's never – Well, it's not expressly. But I will say that the decision in – In addressing this, I think you should assume that at least before this panel, Bryan is good law. Now, if it's not distinguishable, then we have to follow it. If it's distinguishable, tell us why. Well, let me distinguish it. Sure. The first – I mean, I think the most obvious point is that this concerns an entirely different statute. It's the Federal Communications Act. This case concerns the Federal Power Act. And there has been a line of cases in the U.S. Supreme Court concerning – well, it's the Natural Gas Act. But, you know, the court construes that identically with the Federal Power Act concerning the filed rape doctrine that I think governs this particular case. And that's the Pan Am petroleum case in which Justice Frankfurter said, you know, the fact that the contract dispute arises in the context of an industry that's heavily regulated doesn't mean that the contract claim is a federal claim. So we submit that that controls this case. So you don't even have to get to Bryan because it concerns an entirely different statute, which has – perhaps has entirely different policy considerations. And I think some courts have found that there's even complete preemption to parts of the Federal Communications Act, which no court has found with respect to the Federal Power Act. And that's your first ground. Do you have any others? Yes, because in Bryan 1, the plaintiff directly attacked a line item on the power bill that represented the federal uniform service charge. It was saying, this charge is unfair. You've misrepresented what it really is about. But that wasn't the claim – that wasn't the claim at issue in Bryan. I thought the claim at issue in Bryan was the one where they brought the state law claim that didn't directly attack it. And we said it doesn't matter because it amounts to an effective challenge to it. You're not directly attacking it, but you're still effectively challenging it by bringing your state law claim. So yeah, there were – the two other claims were direct attacks and everybody agreed on those. But the one that was at issue was the one that was not the direct attack. So can you distinguish that one? I'm sure. And you're talking about the North Carolina – I think it was unfair trade practices claim. And this court – I think the district court in our case has mischaracterized really – because I think this court in Bryan said that this was effectively a direct attack on that charge. And so it was a direct attack on that tariff. Right, and that's what your colleague is about to say here, that this also – you are seeking recovery of expenses or costs that are barred under the tariff. So it is therefore an effective attack on the tariff in exactly the same way that this claim in Bryan was an effective attack on that tariff. Well, I will concede that that's how they want to characterize. Well, so what's wrong with that? Can you say why it's wrong? I'll tell you why it's wrong. It's wrong because we specifically say, look, there's no inconsistency. This is a separate agreement concerning separate matters. And we're not saying that the tariff was unfair or unreasonable or anything like that. We're just saying that there's a separate agreement that says that in which – that we want to enforce that they had promised to make us whole in the event that we do something that was not required under our agreement. And I'll tell you, this is very similar to the facts in Pan Am Petroleum. Because in that case, you had a federally filed tariff that dictated the price. And the federally filed tariff included this minimum price that the state of, I believe it was Kansas, had required for gas payments on a particular field. But then the parties entered into a separate agreement. They said that basically that if this minimum price gets reversed, then the producer would reimburse the purchaser for the difference. And Justice Frankfurter, looking at that, said that, well, that's just a straightforward contract claim. Now, the other side may raise as a matter of a defense the filed rate. But that's a federal defense. That's not an affirmative claim. And it doesn't give rise to the cause of action here. So, again, I mean, that's another way of, I think – Can I ask you a question? Counsel, can I ask you a question? I'm just trying to get my hands on what is really at stake in this case, which I have trouble with. Will you just assume with me for a minute, just purely hypothetically, that I think putting jurisdiction to one side, this case is going to have to be dismissed under the filed rate doctrine, whether it's as an affirmative defense or not. My understanding is you can't really have a claim that depends on a side agreement outside of a federal tariff, because the tariff is the complete relationship between the parties. So just assume. You probably disagree. But if that's right, if this case is getting dismissed one way or another, why does it matter whether that decision gets made in federal court now or later in state court? What are the practical stakes of this jurisdictional question? Well, first, we do disagree. We think that there are strong reasons, I mean, but it matters just from a federal state court relationship perspective, because- But what does it matter to the parties? I mean, we can worry about the federal state relationship. Well, we obviously disagree with the district court's opinion. And in state court, this could not have been handled by a 12B6 motion. This would be a plea in bar. We'd be entitled to discovery, and we'd be entitled to a jury. And we think the facts- I'm sorry, why is that? I'm sorry. In state court, you can't bring a motion to dismiss based on the filed rate doctrine? If you have an affirmative defense and you want to bring it before the court, you do so as a plea in bar. And under Virginia law- I think you can get a jury trial in the Virginia state court. I think that's true. It's interesting to me here that you started all this by going to FERC and telling them that you wanted $15 million more than the parap would get you. And then you lost there. You went to this D.C. Circuit, and you litigated there. You wanted $15 million. And then you went to the Supreme Court of the United States, and you lost there. And then you came to the Virginia state court and said, we need $15 million on these state claims. And you calculate that $15 million based on the federal tariff. That's the sequence of events here. Isn't that correct? Well, you're correct that we went to FERC first, but we didn't base the- All right, I'm correct that you went to FERC first. Then where did I go wrong in that recitation? Sure. Well, FERC is not a court of general jurisdiction. It only had the power- You lost at FERC. You went to the D.C. Circuit. Yes, and the only issue before the D.C. Circuit was the retroactive- Yes, but the issues were very limited. You went to the Virginia state court, and at every stop, you asked for the same $15 million, which was over and above what you're entitled to under the tariff, which is the law of the land. Well- The tariff. Again, the question for the- Those facts are plain on any of the documents that we got. We can judicially notice all the proceedings you've been to before, and so can the district court. If I can answer, we went to FERC because that was the easiest route, and it was the route recommended by PJM. Obviously, the simplest way of resolving this dispute was to get a waiver, a retroactive waiver of the filed rate, but FERC is not a court of general jurisdiction. Because you were $15 million short under the tariff. You wanted a waiver, and there's a policy against waivers or a law against waivers. Well, the FERC does not have the power to issue a retroactive waiver. That is correct, and that was the sole basis for FERC's decision, and it was the basis for the D.C. Circuit's opinion. But again, FERC does not have the power to adjudicate claims for, say, disordered breach of contract, unjust enrichment, negligent misrepresentation, and those claims had to be brought in a tribunal that had jurisdiction over this, which is what we did. We weren't able to get relief the easy way, so we had to go to court. Yes, I see that my time has expired, and I'd like to reserve the remaining time unless the court has questions. Thank you very much. Judge King, do you have further questions? Judge King? I do not. Okay. I'm fine. Thank you so much. Thank you very much. Thank you. Mr. Walker? Thank you, Your Honor. May it please the court. Lucas Walker for APLE PJM Interconnection LLC. In Brian 1, this court held that it's beyond dispute that a claim arises under federal law where it seeks to alter the terms of a relationship set by a federal tariff, where it asks the court to second-guess the reasonableness of a federal agency's rate-making determination. Well, this case is a little different, maybe not a lot different, but tell me this. Is the federal question a necessary element of every one of the well-pleaded state claims? Yes, we believe that it is. Okay. It's an element of unjust enrichment. Now, see, I thought unjust enrichment, breach of contract, and negligent misrepresentation, which are the three claims here, could be brought without any other, without any federal question, a regular, at least in Maryland, state law claim. Is that different in Virginia? They're not state law claims? So it depends on what the nature of the actual claim being alleged is. So, you know, in Grable, for example, it was a quiet title claim. It usually doesn't involve any federal questions. But the one that was being brought there did involve federal questions. And that's the case. But if you look at the complaint here, does it invoke a federal question? It invokes a federal defense. But I didn't see a federal question. And maybe my colleagues have both been in this field more than I have. So tell me how you can tell from the face of these complaints that there is a federal question involved. So, first of all, under the Artful Pleading Doctrine, a party cannot manipulate jurisdiction or evade it just by failing to plead a necessary federal question. So I think that's part of the important background that Brian recognized. Beyond that, I think maybe one of the clearest ones is that in unjust enrichment, it is the plaintiff's burden to show as a condition precedent or an element or a threshold showing, however you would like to label it, that there's no contract in law that governs the relevant transaction. And that's because unjust enrichment is an equitable remedy. And so the plaintiff, in order to proceed in equity, has to show there's not a contract in law that would govern the relevant transaction. And in the complaint, ODIC tries to satisfy that condition to an unjust enrichment claim by saying it's not covered by the federal tariff. But, of course, we dispute that and it's not true. But ODIC would have to show that there's not an express contract that governs that issue. Right. I think that's a great defense. Well, it also can be a defense. The Filed Right Doctrine is, of course, a defense. But as Brian 1 explained in footnote 10, that the principle that a challenge to a federal tariff gives rise to a necessary federal question and supports a rise in the jurisdiction. But this isn't, on its face anyway, a challenge to the tariff. It is not on its face in the sense that it doesn't say the tariff is unjust and unreasonable. But in Brian 1, that was also the case. It wasn't saying that the rate that was being filed under the tariff was unjust or unreasonable or too high or too low. It was saying that certain marketing practices, certain disclosures were misleading and deceptive under North Carolina law. And this court held and reinforced in Brian 2 that that was a sufficient challenge and attempt to alter the terms of the tariff relationship. Because what it sought to do was obtain damages that would effectively change the rate that the tariff provided for. And I'd note that as the dissent in Brian 1 observed, Bell South actually conceded that the marketing practices that were directly being challenged were not themselves contained within the tariff. It was instead the fact that the damages sought would have required a refund or a different rate of something that was governed by the tariff. They created the federal question and gave rise to federal jurisdiction. And that's even more clear here because ODIC's claims in substance, despite its article pleading, are arguing that it did not receive adequate compensation for these jurisdictional tariffed wholesale energy services. It's trying to get the exact same $14,925,669.58 for the same categories of costs that FERC already held the tariff doesn't allow PJM to pay ODIC. And that ODIC conceded and conceded today, I think, would require a waiver of the tariff. The D.C. Circuit said would rewrite the terms of the tariff. And that seems to me about as clear an example of an attempt to alter the terms of the tariff relationship as you can get. Can I ask you a question, counsel? So we in Brian, we have that footnote that says, look, we're not saying that every time the filed rate doctrine would apply because there is an effective challenge to a tariff cap. That means there will always be a federal question. And we cited approvingly the facts case from the Second Circuit, where, as we described it, the plaintiff's state law claim relied on an alleged side agreement apart from the tariff. And isn't that basically what we have here, a claim that there is a side agreement apart from the tariff? And the Second Circuit, in fact, says, look, you're going to lose on the merits under the filed rate doctrine because you can't have a side agreement apart from the tariff. But that's a defense. So we're sending it back to state court. Well, actually, they didn't have to send it back, and I can't remember why not. But for some freakish reason in that case, they heard the case anyway, and they said, there's no federal question jurisdiction. We have jurisdiction on some other ground. You lose, the plaintiffs lose on the merits under the filed rate doctrine because you're not allowed to have a side agreement apart from a tariff. But that because they are suing under the alleged side agreement, there's no federal question jurisdiction. And we cited that approvingly in Brian. So why isn't that this case? Sorry. I think there are two main responses to that. The first one is with respect to the breach of contract claim. In fact, the alleged contract was on its own terms outside the scope of the tariff. It was before the parties had done business with each other. AT&T represented that it was going to file these promised rates with the FCC to make them the tariff rate, but it failed to do so. Doesn't that go more to the merits of whether or not they're going to lose on their filed rate doctrine defense than to the federal question? Well, I think it's important because the timing can matter in these things. As the Seventh Circuit explained in the Northeastern case, if what you're arguing the claim is based on is an alleged contract, an alleged breach that predated any tariff relationship between the parties, any federal tariff relationship between the parties, then you may well have a very good filed rate defense, as the court recognized in the Northeastern case. But it doesn't give horizon under jurisdiction because you don't have the key insight of Brian and cases like Marcus and Hill, that you have a federal tariff that's in place that conclusively and exclusively defines the rights and obligations of the parties at that point in time. There's no dispute that the tariff, that PJM's tariff was in effect for the entirety of all of this, all the events in question here, which is why ODEC previously asked for to waive them and it was unsuccessful in doing so. The second point on tax telecommunications is that it didn't involve an unjust enrichment claim, and I think that does present quite different issues. In fact, Brian found it beyond dispute, like he wasn't even something that was seriously contested, that the unjust enrichment claim that was trying to get a rate different than what the tariff provided necessarily arose under federal law. It required a court to determine a reasonable rate or reasonable value of the services. Does the footnote in Brian 1 say that? Does it say what we're saying here applies but doesn't apply to, for example, an unjust enrichment claim? So the footnote doesn't, but I believe it's on the same page. It's page 430. But the footnote seems to me was a pretty good response to the dissent, the dissent that your colleague would like us to embrace, but we generally go with the majority opinion. It wasn't a throwaway. I hear you. I think it's a recognition that the Brian 1 majority recognized that a preemption defense or a fathering defense does not give rights to a rising under jurisdiction. But when you have the situation when this existing tariff already defines entirely the relationship between the parties, trying to alter the terms of that relationship necessarily presents a federal question. There is daylight. There are times, like in the Northeastern case from the Seventh Circuit, that the filed rate is a defense, but it's not a basis for jurisdiction, in part because of the timing of when the tariff relationship actually began. In addition to that, because we've been talking about elements. Now, Brian 1 itself doesn't speak directly about elements, because it understands that you can't avoid federal jurisdiction by failing to plead necessary federal questions. So it asks, are you trying to change the terms of the federal tariff relationship? Are you asking a court to second guess an agency's rate-making determination? And the Brian 1 dissent actually agreed with that. If you would require a court to second guess a federal agency's rate-making determination, that does necessarily raise a federal question. And it's really clear here, because ODEC is not only asking to depart from the tariff rate, but to disregard FERC's determination that the tariff doesn't allow this and cannot be waived to allow it. I actually don't understand that argument. I mean, I still think, yes, that's a defense, but I don't see how the complaint can be read to say that. Well, you know, one part of it is that you have nothing more to add. I don't I don't need to be labored to argue your case. Yeah. So our full pleading is not a get out of federal court free card. And Brian 1, recognizing that, said if what the claims are in substance doing, apart from the labels that have necessarily been put on them, is to ask the court to second guess what a federal agency has done for rate-making, then that presents a substantial federal question. And it's because the value of those services that would be needed to determine damages is also a question of federal law. So. And can you just close the loop for me? I feel like this must be very straightforward because you're sort of assuming it as a premise. But just explain to me, how does this complaint require us to second guess the reasonableness of the tariffs? I thought they were saying we have a way to calculate. This is a side agreement, right? Forget the tariff. You told us if you will produce energy during this polar vortex, we will make you whole for your extra gas prices and stuff like that. And please pardon. That's not like really crisp legal language. But we will make you whole for your extra costs during this time. And they say, I think and we can say they broke that agreement and we can figure out the damages. Just, you know, regular contract case like we relied on you. We bought this much fuel and then we couldn't use it because you canceled the orders. And so you owe us this much money. And what does that have to do with the tariff? That's what they would say. So why is that wrong? Well, it's an attempt to get to alter the amount of compensation for these tariff services. That's different from what the tariff allows. And that's the same thing that happened in Bryant. They may have thought, well, the damages that we would get would be some different amount. And that's not determined by federal law. But the effect is to change what the tariff says. So I thought part of the problem in Bryant and tell me if I'm wrong, was that until oral argument, the plaintiffs didn't come up with a damages theory that was anything other than these rates are too high. You should lower them a bit. And then an oral argument, they came up with a theory more like the plaintiffs here. Like, no, no, no. We've got a separate way to calculate damages. And we said, well, that's too late. But here they came up with it. It looks to me like they came up with something very much like what the Bryant plaintiffs came up with too late, but in plenty of time. But I may be misunderstanding. So the tariff says the amount they get is zero. And even if we get into the details of their damages calculation. So it's the same 14 million dollars in change they saw before FERC and the D.C. Circuit. And they bring it in here. And we know that that's supposed to be compensation for these tariff wholesale energy services, preparing to generate and generating electricity for the PJM bulk energy system. And as discussed on page 37 of our brief and in footnote nine, it goes through the details of that damages calculation, which they fully disclosed before. FERC is the same rationale that's behind the 14 million dollar judgment they have here. And it excluded costs that that you said represented, excuse me, that were inherent in participation in organized markets as a generation provider and should not be unreasonably allocated. And so it is itself trying to replicate the fact that this is a tariff system where allocations of risk are set by the tariff. And it is trying to change those terms. So if you asked for damages of 20 million dollars, I mean, no, no relation to the tariff, there would be the complaint would be fine. Well, I think the problem is that what it is seeking compensation for are these wholesale tariff energy services, preparing to generate and generate electricity in PJM's market in its status as a generation capacity resource. And the tariff says the amount is zero. And so any amount that they saw, however, they sought to calculate. The reason I asked you that you kept going back to the four to the figure, the exact same figure. And I thought that that you had some significance. So that's why I was asking what if they asked you for a figure that wasn't that? Does it make a difference what the amount of damages are as far as you're concerned? No, the answer would be the same because it would seem to alter the tariff terms. It would ask a court to determine a reasonable rate for these tariff services. But we know. So I think I understand the logic of that argument. But am I right? Like that would be you want us to if we adopt that argument, we're going a step further than Brian. Right. Because in Brian, we said we don't have to decide in this case whether just the mere fact that you're awarding they just came up with no form of damages that was anything other than please give me a refund of some portion of these approved fees. They did link it to the tariff. So we so we said we could stop short, I think, in that case from adopting your theory, which is like, look, if you're suing for compensatory damages for any part of the activity that is regulated by a tariff, that's it. You're challenging the tariff and there's federal question jurisdiction. That's a bit further than we went in Brian. Right. I don't think it's very much further at all. And it really just comes down to asking the court to determine a reasonable rate for these tariff services, which is the hallmark. What question do you think we left open in Brian when we said we need not and do not decide whether every award of compensatory damages would serve to challenge a carrier's tariff? I think at a minimum, it would cover those situations where the alleged breach predated the tariff relationship, like the Northeastern case, where the filed rate doctrine may well provide an affirmative defense, but it might not lead to arising under jurisdiction. That's at a minimum. What are the maximum? I think that that would be a good maximum to go with, too. I don't think that's what we were talking about. It doesn't really matter because we can go further than we went in Brian, but I really don't think that's what we were talking about. We cite all these cases that say whenever one party to a filed rate to a tariff sees compensatory damages, that's enough. And then we have the parenthetical saying, well, just simply bar all claims for compensatory damages because plaintiffs would effectively receive a discounted rate. And then we say we don't have to go that far in this case. So I think, well, it doesn't matter because we can go further. Based on that broader principle, there are narrower grounds certainly to resolve this particular case. And that's that if you're looking at just the state law elements, as ODIC would, each claim does in fact require some reference to federal law. They all require damages, and I think damages for wholesale energy services is ultimately a question of federal law. The unjust enrichment requires the plaintiff to prove that there's not a contract in law that governs the transaction. It also requires the plaintiff to prove what are the value of the services that were rendered. And when we're talking about wholesale energy services, that value is going to have to be determined by reference to federal law. The breach of contract claim, as markets recognize, the only possible contract is this tariff relationship that governs the exclusive rights of the parties. Excuse me, can I just ask you one question, and I'll give you some extra time because this is far-fetched and this is not this case, I understand that. But you always go back to your defense and the tariff. But if we have this complaint, and for some reason the defendants don't have the excellent lawyers that they have here, indeed they have no lawyers at all. The state court dismisses the complaint because it's not well-planned? You don't get to any dismissal until you have the defense, right? The affirmative defense is. So, as I think... I mean, the complaint in itself is okay. It states three clauses of action. Well, it's... It's not invoking the tariff. Well, I think I would disagree with that. As footnote 8 in Bryan says, that the filed rate defense is not coterminous with the question of whether it's seeking to alter the terms of the tariff, and therefore gives rise to federal question jurisdiction. But I will... Go with me on this complaint. It's not that not invoking the tariff or not. There's nothing about the tariff. They have a separate contract. I understand. You don't think they can have a separate contract, but they're claiming under that asserted separate contract. So I'll speak directly to the alleged contract here. So they say there's offer acceptance and consideration. Right. But the alleged offer that's pleaded in the complaint. This is paragraph 44, J28. It says that it's recorded in these tape recorded and written communications between ODIX agent ACES and PJM. And those alleged promises, those tape recorded and written communications are integral to the complaint. They're fairly considered part of the complaint, appropriate by reference. We presented those to the district court, those transcripts. And the transcripts allege, suggest at most, we don't think there was any promise made on the merits. But they discuss reimbursement according to the terms of PJM manuals. And PJM manuals serve only to implement the tariff itself. They must conform to tariff. It cannot deviate from it. So the specific offer or promise that's alleged in this complaint is one to compensate at most consistent with what the tariff allows. And that's JA 105 section 1.7.14 of the tariff that makes clear the manuals can only implement the tariff itself. So a promise to pay according to the manuals is bound up in the tariff itself. And you have to resolve what the tariff allows to resolve that claim. I apologize for going over. No, no, no. I brought you over. Judge King, do you have any more questions? Judge King? I'm fine. No, I'm fine, Your Honor. Judge Harris? No, thank you. Thank you very much. We appreciate your argument. Counsel, do you have rebuttal? Yes, just a few points. First, my friend on the other side completely, I mean, repeatedly refers to the artful pleading doctrine. And as this court knows, the artful pleading doctrine arises only in cases where there is complete preemption. So this is a case like where somebody is claiming ERISA benefits and doesn't mention that it's an ERISA plan. In that case where the claim has been deemed to be a federal claim, you can't, by artful pleading, get out of it. But there's no complete preemption. No court has ever held that there's complete preemption under the Federal Power Act. In fact, that would be inconsistent with the panel. Counsel, if that's right, then isn't Brian wrong? Because Brian took that state law claim that had no reference on its face whatsoever to the tariff and said, sorry, you still can't do that because it's an effective challenge to the tariff. So, I mean, again, I think you're kind of pushing up against Brian pretty hard here. Well, if you look at Brian, the words artful pleading and the artful pleading doctrine apply occur nowhere. So the court had a different ground. Well, no, remove the artful pleading doctrine. Just try to distinguish Brian. Right. I mean, sure. Yeah, well, I mean, the holding in Brian was that this was an effective challenge to a federal tariff, and that gave rise to jurisdiction, and that wasn't the artful pleading. Whether or not it mentioned, whether or not that appeared on the face of the complaint. Like it didn't matter because it effectively challenged the rate. Why is this case different than that? Why can't you say the same thing about this case? Well, I mean, again, for the reasons that I stated before, we're not directly challenging the tariff. We're saying that there is- No, effectively challenging. We're not effectively challenging the tariff either. We're alleging a separate agreement that is independent from and not inconsistent with the tariff. Now, my friend on the other side disagrees, but that's their defense. It's not our claim. And under the well-pleaded complaint rule, you look to the four corners of the complaint. Believe me, we understand the well-pleaded complaint doctrine. We understand. We understand. What we want you to do is to try to distinguish Brian. If you don't have anything more to say to us about that, fine, but- Sure, sure. Well, those were the points and the points in our brief that we assert that distinguish Brian. Now, turning to the unjust enrichment claim, it is not an element of unjust enrichment that you plead the nonexistence of a controlling contract. You can raise that as a defense. I'll grant you that. But that's not an element of an unjust enrichment claim. So my friend has not cited any authority from Virginia or North Carolina that says that it's an element of such a claim. And that's the test for a necessary federal issue. And, you know, in terms of this question about whether a damages claim necessarily, you know, means that there is a substantial federal question, that particular issue was raised and resolved in the One Oak case, the One Oak v. Learjet. And that was a state law antitrust action brought against, I think it was gas pipelines who were engaged in sort of this price-fixing scheme. And the argument was, well, look, if we allow this, that's going to affect the wholesale rates of gas. And that would be terrible. And that would be contrary to the file rate doctrine. And the Supreme Court said no, that we'll allow a damages claim because it's based solely upon state law. And that's exactly what we have here. We have three state law claims requesting damages. And again, PJM is not a load-serving entity. PJM is not the entity ultimately buying the electricity. It's a pass-through entity. It organizes the market and it controls the grid. So, I mean, it's not like we're trying to change the price that PJM paid for electricity. We're trying to hold PJM accountable for wrongdoing that they did for either making a false promise or a false statement that they would make ODAC halt in the event that it did these extraordinary things such as buying gas at 30 times what the ordinary price for gas was. I see that my time has expired. There are no further questions. Thank you. Thank you very much.
judges: Diana Gribbon Motz, Robert B. King, Pamela A. Harris